**LONGWOOD VILLAGE
RESTAURANT, LTD.,**
Plaintiff,

v.

**John ASHCROFT, U.S. Attorney
General, et al., Defendants.**

**Civil Action No. 00–2331(RMU).**

United States District Court,
District of Columbia.

July 26, 2001.

Susan Au Allen, Paul Sherman Allen & Associates, Washington, DC, for plaintiff.

Sonia Orfield, Special Assistant United States Attorney, Washington, DC, for defendants.

## MEMORANDUM OPINION

URBINA, District Judge.

DENYING THE DEFENDANTS' MOTION TO DISMISS; DENYING THE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING WITHOUT PREJUDICE THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the court on the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(h)(3) and motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). On January 26, 1998, Longwood Village Restaurant Ltd., also known as King's Island Chinese Restaurant ("the plaintiff" or "King's Island"), a Pennsylvania corporation, filed an I–140 Immigrant Petition on behalf of Mr. Chang Lian Zeng ("Mr. Zeng"), a citizen of the People's Republic of China. During the time that it normally takes to process an I–140 Immigrant Petition, a dispute arose between King's Island and the Immigration and Naturalization Service ("INS")[1] regarding Mr. Zeng's priority date. The priority date is the date by which the U.S. Department of State determines an applicant's place in line for an immigrant visa number. A person must have a priority date to receive an immigrant visa number.

This dispute revolves around King's Island's claim that Mr. Zeng—whom King's Island wants to hire for its restaurant—is already the beneficiary of another immigrant petition filed by the Springfield, Virginia Dunkin Donuts on August 24, 1990. Thus, King's Island contends that Mr. Zeng should have a much earlier priority date than the one assigned to him by the INS. The INS counters that because it revoked Springfield Dunkin Donuts' petition on behalf of Mr. Zeng, he is not entitled to the August 24, 1990 priority date.

The defendants move to dismiss the complaint or in the alternative for a judgment on the pleadings. For the reasons that follow, the court will deny the defendants' motion to dismiss and motion for a judgment on the pleadings. Furthermore, the court determines that the INS erred in revoking the immigrant petition filed by Springfield Dunkin Donuts on behalf of Mr. Zeng and will order the INS to reinstate Mr. Zeng's original August 24, 1990 priority date.

## II. BACKGROUND

This case concerns the priority date assigned to Mr. Zeng by the INS. Mr. Zeng

---

1. Along with the INS, the other defendants are the U.S. Attorney General; Richard Sherman, the Center Director for the National Visa Center (NVC); and Paul Novak, Jr., the Center Director of the INS Eastern Service Center.

is a citizen of China who is the beneficiary of an approved alien employment certification and visa petition filed by King's Island Chinese Restaurant, a Pennsylvania corporation. *See* Compl. ¶¶ 2, 7, 11.

On August 24, 1990, Springfield Dunkin Donuts ("Springfield Donuts") filed an application for alien employment certification to hire Mr. Zeng as a kitchen helper. *See* Compl. ¶ 7. The U.S. Department of Labor approved the application on December 26, 1990. *See id.* Subsequently, Springfield Donuts filed an I–140 immigrant visa petition with the INS Eastern Service Center to classify Mr. Zeng as an unskilled worker pursuant to section 203(b)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U .S.C. § 1101 *et seq.* *See* Compl. ¶ 8. On April 1, 1992, the Eastern Service Center approved the petition, stating that it had forwarded the approved visa petition to the Department of State Immigrant Visa Processing Center ("TIVPC"), which would contact Mr. Zeng about the processing of his immigrant visa application and would make the final determination as to which U.S. Consulate would handle the final processing. *See id.*

As the beneficiary of an I–140 immigrant visa petition, Mr. Zeng received a priority date. The notice of approved visa petition sent by the Eastern Service Center listed August 24, 1990 as the priority date. *See id.* A priority date allows an alien to apply for an immigrant visa, which an alien must have in order to come legally to the United States to work. The priority date is the date which the Department of State uses to determine an applicant's place in line for an immigrant visa number. The application for an immigrant visa, however, does not guarantee the visa will be granted. *See* Pl.'s Opp'n to Mot. to Dis. ("Pl.'s Opp'n") at 4. Currently, there is a processing backlog because of the high demand and the limited availability of im-

migrant visas in the employment-based category. *See id.* As a result, the application process can take years between the initial application and the date of final processing. *See id.* On April 6, 1995, TIVPC notified Mr. Zeng that his case had been sent to the American Consulate post in Guangzhou, China, and instructed Mr. Zeng to begin his immigrant visa application process. The notice also listed August 24, 1990 as the priority date. *See* Compl. ¶ 9.

On March 18, 1997, Mr. Zeng's attorney wrote to the American Consulate post in Guangzhou to advise them that her client was "no longer interested in the job offered by the petitioner [Springfield Donuts] and intend[ed] to work for a similar employer." *See* Pl.'s Cross–Mot. for Summ. J. (Ex. B). In addition, Mr. Zeng requested the return of the approved visa petition and contract certification. *See id.* The letter also explained that Mr. Zeng "intend[ed] to preserve his priority date in this case, 8/24/90 and use it in a new visa petition." *See id.* On January 14, 1998, the Eastern Service Center informed Springfield Donuts that the approved petition had been revoked automatically, in accordance with 8 C.F.R. § 205.1(a)(3)(iii)(C), because Springfield Donuts had withdrawn the visa petition. *See* Compl. ¶ 10.

Two weeks later, on January 26, 1998, King's Island filed an application for alien employment certification to hire Mr. Zeng, also as a kitchen helper. The Department of Labor approved the application on February 16, 1999. *See* Compl. ¶ 11. King's Island then filed an I–140 immigrant visa petition with the INS to classify Mr. Zeng as an unskilled worker, again pursuant to section 203(b)(A)(iii) of the INA. *See id.* The INS approved the visa petition on November 30, 1999, stating that it had sent the approved visa petition to the Na-

tional Visa Center ("NVC"),[2] which would choose the consular post to send the approved petition to and would contact Mr. Zeng about his immigration visa process. This notice of approved visa petition, however, listed January 26, 1998 as the priority date.

On December 14, 1999, King's Island wrote to NVC explaining that Mr. Zeng was the beneficiary of a previously approved labor certification and visa petition filed by Springfield Donuts that had an earlier priority date: August 24, 1990. *See* Compl. ¶ 12. In addition, King's Island informed NVC that Mr. Zeng wanted to use the August 24, 1990 priority date to establish his place in line for an immigrant visa number. *See id.* On March 17, 2000, King's Island wrote to Paul Novak, the Center Director of the Eastern Service Center, to request the issuance of a new notice of approved visa petition showing the earlier priority date. King's Island also asked for the transfer of the case to the NVC so Mr. Zeng could receive the necessary forms ("Packet III") and begin to process his immigrant visa application. *See* Compl. ¶ 13.

On April 27, 2000, the Eastern Service Center issued a new notice of approved visa petition to King's Island indicating August 24, 1990 as Mr. Zeng's priority date and stating that it had sent this approved petition to NVC, which would forward it to the appropriate consulate post for visa processing. *See* Compl. ¶ 15. As a result, King's Island wrote to NVC requesting Mr. Zeng's Packet III. On May 19, 2000, NVC responded to King's Island's letter stating that it had not received the immigrant visa petition mentioned in the letter and that the restaurant should file a duplicate petition with the INS. *See* Compl. ¶¶ 16, 17.

On June 14, 2000, NVC responded to King's Island renewed request for Mr. Zeng's forms. NVC informed King's Island that immigrant visa numbers were not available for Mr. Zeng's use because his priority date was January 26, 1998. *See* Compl. ¶¶ 18, 19. Even though the Eastern Service Center had issued a new notice of approved visa petition to King's Island listing August 24, 1990 as the priority date, the NVC insisted that Mr. Zeng's priority date was January 26, 1998. At that time, however, immigrant visa numbers were available to applicants in Mr. Zeng's category: namely, unskilled workers with priority dates before October 1, 1994. *See id.*

On June 21, 2000, King's Island notified NVC that the correct priority date for Mr. Zeng should be August 24, 1990, not January 26, 1998. King's Island also asked NVC for a Packet III showing the correct priority date. *See* Compl. ¶ 20. On July 11, 2000, NVC wrote King's Island to say that the immigrant visa petition had been received and assigned case number GUZ000665002, but that the request for an earlier priority date was under review, and that NVC would notify King's Island when it made a decision. The letter listed January 26, 1998 as Mr. Zeng's priority date. *See* Compl. ¶ 22.

On August 3, 2000, NVC responded to further inquiries from King's Island by informing the restaurant that it should direct any questions to the INS office to which the petition was originally submitted. *See* Compl. ¶ 24. On August 18, 2000, King's Island wrote NVC and asked why the approved petition was returned to INS for priority-date review. King's Is-

---

**2.** The Department of State Immigrant Visa Processing Center is now called the National Visa Center of the U.S. Department of State.

land also explained why it believed Mr. Zeng deserved the earlier priority date. *See* Comp. ¶ 25. That same day, King's Island argued to Mr. Novak of the Eastern Service Center why the earlier priority date should be used and asked that the approved visa petition with the correct priority date be returned to NVC so that Mr. Zeng could begin his immigrant visa process. *See* Compl. ¶ 26.

By September 29, 2000, King's Island had still not heard from the INS Eastern Service Center or from NVC, so it filed a complaint in federal court. *See* Compl. ¶ 27. The defendants countered with a motion to dismiss and a motion for judgment on the pleadings.

### III. ANALYSIS

#### A. Legal Standard for Mootness

Before a court may consider the merits of a case, it must determine whether it has subject-matter jurisdiction. The Supreme Court has held that Article III's case-or-controversy requirement prohibits courts from issuing advisory opinions or decisions based on hypothetical facts or abstract issues. *See Flast v. Cohen,* 392 U.S. 83, 96, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Accordingly, a court may not rule on the merits of a case in which the claims for relief are moot.

A case is moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *See Albritton v. Kantor,* 944 F.Supp. 966, 974 (D.D.C.1996) (quoting *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)). An intervening factual event may render a claim moot because the change in circumstances deprives the plaintiff of a present right to be vindicated or causes the plaintiff to no longer have a stake in the outcome of the litigation. *See Aiona v.*

*Judiciary of Hawaii,* 17 F.3d 1244, 1248 & n. 6 (9th Cir.1994). The intervening event will render the case moot only if the event completely eliminates the effect of the alleged violation and there is no reason to believe the alleged violation will recur. *See Honig v. Students of the California Sch. for the Blind,* 471 U.S. 148, 149, 105 S.Ct. 1820, 85 L.Ed.2d 114 (1985). If, however, the plaintiff retains some personal stake in the controversy and there are some outstanding issues that a court may resolve, those claims may proceed for review even though an intervening event might have rendered other issues moot. *See Hartmann v. Loudoun County Bd. of Educ.,* 118 F.3d 996, 1000 n. 1 (4th Cir. 1997); *accord McPherson v. Michigan High Sch. Athletic Ass'n,* 119 F.3d 453, 458–59 (6th Cir.1997). The movant must also show that "interim relief and events have completely and irrevocably eradicated the effects of the alleged violation." *See Albritton,* 944 F.Supp. at 974 (*citing Davis,* 440 U.S. at 631, 99 S.Ct. 1379).

The burden of establishing mootness rests on the party raising the issue, and it is a heavy burden. *See Davis,* 440 U.S. at 631, 99 S.Ct. 1379; *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *Motor & Equip. Mfrs. Ass'n v. Nichols,* 142 F.3d 449, 458–59 (D.C.Cir.1998).

#### B. Legal Standard for Judgment on the Pleadings

A district court should grant judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The standard of review for such a motion is essentially the same as the standard for a

motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C.Cir.1987); *Cobell v. Babbitt*, 30 F.Supp.2d 24, 29–30 (D.D.C.1998). All allegations contained in the complaint must be accepted as true. *See Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). All factual doubts must be resolved and all inferences made in favor of the plaintiff. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "However, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." 2A Moore's Federal Practice § 12.07, at 63 (2d ed.1986); *see also Haynesworth*, 820 F.2d at 1254.

### C. The Case is Not Moot

■ In this case, the court holds that there are still outstanding claims for relief, and, thus, that the case is not moot. Specifically, the court determines that the plaintiff's request for the assignment of August 24, 1990 as the applicant's I–140 immigrant petition priority date has not been addressed by any intervening event. The defendants argue that the current priority dates reported in the May 2001 "Visa Bulletin" allow Mr. Zeng to apply for a visa now. As a result, they contend, this intervening event renders this controversy moot.

The court is not persuaded by the defendant's argument. Although the dates reported in the May 2001 "Visa Bulletin" would allow Mr. Zeng to apply now for a visa using the January 1998 priority date, the court agrees with the plaintiff that the question of whether there was effective revocation of the approved Springfield Donuts' I–140 immigrant petition remains a live issue before this court.

Generally, an "intervening event will render [a] case moot only if the plaintiff is wholly divested of all personal interest in the outcome of the controversy or if the event completely eliminates the effect of the alleged violation and there is no reason to believe that the alleged violation will recur." *See* 15 Moore's Federal Practice § 101.93[2] (3d ed.2000); *see also Honig*, 471 U.S. 148, 149, 105 S.Ct. 1820 (1985). The court disagrees with the defendants' argument that Mr. Zeng's ability to apply now for a visa using the January 1998 date renders this case moot. Only by giving Mr. Zeng the August 1990 priority date would the defendants eliminate the plaintiff's claim for relief. In doing so, the case would become moot.

Because the plaintiff has an outstanding claim for relief, the court holds that this case is not moot. Accordingly, the court denies the defendants' motion to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3).

### D. An Issue of Material Fact Remains

The underlying issue in this case is whether the defendants properly revoked the approved I–140 immigrant petition filed by Springfield Donuts on Mr. Zeng's behalf. In ruling on a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), the court must decide if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *See Hishon*, 467 U.S. 69, 73, 104 S.Ct. 2229 (1984). The plaintiff has asked the court to consider whether there was effective revocation, pursuant to 8 C.F.R. § 205.1(a), and to reinstate Mr. Zeng's August 1990 priority date. Thus, the court concludes that an issue of material fact remains and that relief could be granted to the plaintiff under the facts alleged in the complaint.

For these reasons, the court denies the defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

### E. The Defendants Improperly Revoked the I–140 Immigrant Petition Filed by Springfield Donuts

▮ The question of whether the defendants properly revoked the I–140 immigrant petition pursuant to 8 C.F.R. § 205.1(a) appears to be one of first impression. Title 8 C.F.R. § 205.1(a) states, in pertinent part, that:

The approval of a petition or self-petition made under section 204 of the Act and in accordance with part 204 of this chapter is revoked as of the date of approval:

\* \* \* \* \* \*

(3) If any of the following circumstances occur before the beneficiary's or self-petitioner's journey to the United States commences ... (A) Upon written notice of withdrawal filed by the petitioner or self-petitioner with any officer of the Service who is authorized to grant or deny petitions.

8 C.F.R. § 205.1(a). The plaintiff argues that the defendants improperly revoked the I–140 immigrant petition filed by Springfield Donuts on behalf of Mr. Zeng. Focusing on the fact that Springfield Donuts never filed "a written notice of withdrawal with any officer of the Service who is authorized to grant or deny petitions," the plaintiff insists that Springfield Donuts, therefore, never withdrew its petition.

The defendants counter that the visa petition was properly revoked. Specifically, the defendants contend that Mr. Zeng's counsel sent a letter to the American Consulate General in Guangzhou that included language that "clearly indicates that Springfield Dunkin Donuts intended to use the labor certification for someone other than Mr. Zeng." See Defs.' Reply to Pl.'s Resp. to Defs.' Mot. for J. on the Pleadings at 4. The defendants argue that the letter's content necessarily "involves withdrawal of the job offer to Mr. Zeng" and that the "letter is written notice of this." See id.

In addition, the defendants argue that the Eastern Service Center sent Springfield Donuts its order recording the automatic revocation of the approval of the petition Springfield Donuts had filed for Mr. Zeng. See id at 3. According to the defendants, Springfield Donuts could have, but did not, challenge the notice of revocation. As a result, the notice of revocation should be taken as final. See id.

In fact, the letter sent by Mr. Zeng's counsel does indicate that Mr. Zeng was no longer interested in the job offered by the petitioner Springfield Donuts and requests the return to Mr. Zeng of the approved visa petition and labor certification. The court also notes that Mr. Zeng's counsel sent the letter to the American Consulate General in Guangzhou.

▮ Because 8 C.F.R. § 205.1(a) requires that the petitioner, Springfield Donuts, file a "written notice of withdrawal with any officer of the Service who is authorized to grant or deny petitions," the court rules that the defendants erred in revoking the I–140 immigrant petition from Springfield Donuts. The defendants have failed to show that Springfield Donuts gave any written notice to "any officer of the Service who is authorized to grant or deny petitions." Thus, the court holds that the letter sent by Mr. Zeng's counsel to the American Consulate did not amount to an automatic revocation under 8 C.F.R. § 205.1(a).[3]

---

**3.** The plaintiff expands on this argument in a surreply. Before filing a surreply, however, a

The court also notes that the letter's second paragraph cannot be interpreted to mean that "Springfield Dunkin Donuts intended to use the labor certification for someone other than Mr. Zeng." Nor does the court agree with the defendants' assertion that the letter's content "necessarily" involves a withdrawal of the job offer to Mr. Zeng. *See* Defs.' Reply to Pl.'s Resp. to Defs.' Mot. for J. on the Pleadings at 4.

 Moreover, the defendants incorrectly argue that Springfield Donuts should have challenged the notice of revocation, and that, because it did not do so, the notice of revocation must be taken as final. The fact that Springfield Donuts did not challenge the notice of revocation does not explain why the defendants issued an automatic notice of revocation based on the letter from Mr. Zeng's counsel to the American Consulate. The language in 8 C.F.R. § 205.1(a) makes it clear that revocation takes place when the petitioner, *not the beneficiary*, sends written notice of the withdrawal of the petition.

Because the defendants have failed to show that Springfield Donuts filed written notification of the withdrawal of the I–140 immigrant petition, as required by 8 C.F.R. § 205.1(a), the court rules that the defendants incorrectly deemed the I–140 petition revoked.

### F. Remedy

 In terms of an appropriate remedy, the applicable statute states that:

Retention of section 203(b)(1), (2), or (3) priority date.—A petition approved on behalf of an alien under section 203(b)(1), (2), or (3) of the Act accords the alien the priority date of the approved petition for any subsequently filed petition for any classification under sections 203(b)(1), (2), or (3) of the Act for which the alien may qualify. In the event that the alien is the beneficiary of multiple petitions under section 203(b)(1), (2), or (3) of the Act, the alien shall be entitled to the earliest priority date. A petition revoked under sections 204(e) or 205 of the Act will not confer priority date, nor will any priority date be established as a result of a denied petition.

8 C.F.R. § 204.5(e).

The language of the statute clearly states that in the event an alien is the beneficiary of multiple petitions, the alien shall be entitled to the earliest priority date unless the petition has been revoked or denied. *See id.* Because the court rules that the defendants improperly revoked the immigrant visa filed by Springfield Donuts on behalf of Mr. Zeng, he is entitled to the earliest priority date of August 24, 1990. Accordingly, the court orders the INS to reinstate Mr. Zeng's August 24, 1990 priority date.[4]

### IV. CONCLUSION

For all these reasons, the court denies the defendants' motion to dismiss pursuant

---

party must move the court for leave to file. The plaintiff did not file such a motion in this case. In addition, the moving party must show that the reply filed by the moving party raised new arguments that were not included in the original motion. *Cf. Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 71, 74 (D.D.C.1998) (granting motion for leave to file a surreply where the reply included a declaration that was not included in her original motion, which raised "matters presented to

the court for the first time"). Because the plaintiff here twice failed to file a motion for leave to file surreply, and because neither of the defendants' replies raised new arguments, the court will not grant leave to file these surreplies and will not consider them.

4. Finally, the court makes it clear that it is not ordering the INS or any other agency to issue a *visa* to Mr. Zeng.

to Federal Rule of Civil Procedure 12(h)(3) and denies the defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Because the court gives the plaintiff all the relief it requested, the court need not consider the plaintiff's cross-motion for summary judgment and denies it without prejudice. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 26th day of July, 2001.

## *ORDER*

DENYING THE DEFENDANTS' MOTION TO DISMISS; DENYING THE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING WITHOUT PREJUDICE THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

For the reasons stated in the court's Memorandum Opinion separately and contemporaneously issued this 26th day of July, 2001, it is hereby

**ORDERED** that the defendants' motion to dismiss the complaint is **DENIED;** and it is

**FURTHER ORDERED** that the defendants' motion for judgment on the pleadings is **DENIED;** and it is

**ORDERED** that the plaintiff's motion for summary judgment is **DENIED** as moot; and it is

**FURTHER ORDERED** that the defendants shall reinstate Mr. Zeng's August 24, 1990 priority date by September 14, 2001.

The parties do not request any other relief. Therefore, this case shall be **DISMISSED.**

**SO ORDERED.**