**CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,**
Plaintiff,

v.

**DEPARTMENT OF the INTERIOR,**
Defendant.

**Civil Action No. 05–2339 (RBW).**

United States District Court,
District of Columbia.

July 31, 2007.

90

Melanie Togman Sloan, Citizen For Responsibility & Ethics, Anne L. Weismann, Citizens for Responsibility and Ethics, Washington, DC, for Plaintiff.

Hannah Chanoine, U.S. Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION

WALTON, District Judge.

The non-profit organization Citizens for Responsibility and Ethics in Washington ("the plaintiff" or "CREW") brings this action against the United States Department of the Interior ("the defendant" or "DOI") seeking disclosure of certain records and information requested pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et seq.* (2000). Complaint ("Compl.") ¶ 1. The documents sought by the plaintiff, which comprise four FOIA requests, *see id.* ¶¶ 30–42, "relat[e] to contacts between [the] DOI and specified individuals and entities that have been linked to the lobbying activities of Jack Abramoff at [the] DOI on behalf of specific Indian tribes, as well as DOI records related to six Indian tribes on this subject," *id.* ¶ 1.[1] Currently before the Court is the defendant's motion for partial judgment on the pleadings and for partial summary judgment ("Def.'s Mot.").[2] For

1. CREW submitted its requests to two components of the DOI: the Office of the Secretary ("OS") and the Bureau of Indian Affairs ("BIA"). Defendant's Motion for Judgment on the Pleadings and Partial Summary Judgment ("Def.'s Mot.") at 1. The Bureau of Indian Affairs maintains and manages its own records and is a component of the DOI separate from the OS. *Id.* at 2 n. 1. As explained further below, the plaintiff's April 21, 2005

FOIA request was made directly to the BIA. Compl.¶ 42; Def.'s Mot. at 9.

2. The following papers have been submitted in connection with this motion: (1) Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings and Partial Summary Judgment ("Pl.'s Opp'n"); (2) Reply Memorandum in Support of Defendant's Motion for Partial Judgment on the Pleadings and Partial Summary Judgment ("Def.'s Reply"); (3) Defendant's Statement of Undisputed Material

the reasons set forth below, the Court grants the defendant's motion and dismisses the plaintiff's complaint.

## I. Factual Background

The plaintiff alleges the following facts in support of its complaint.[3] CREW is a nonprofit organization "committed to protecting the right of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials." Compl. ¶ 4. Under the FOIA, government agencies are required to release requested records to the public unless there is an applicable statutory exception. *Id.* ¶ 8; *see* 5 U.S.C. § 552(a)(3)(A) (stating that each agency shall generally make requested records available to any person).

The impetus behind this litigation can be described as follows: Over the course of six months in 2005, CREW made four FOIA requests to two components of the DOI regarding contacts between lobbyist Jack Abramoff, a number of government officials and six Indian tribes, following revelations about Abramoff's alleged involvement in various acts of corruption and influence peddling. Compl. ¶¶ 14–24. During the course of the submission of the plaintiff's FOIA request, Susan Schmidt of the *Washington Post* wrote an article about the scandal on August 28, 2005, that cited, *inter alia*, e-mails implicating a former DOI official in Abramoff's effort to block the development of a casino that would have competed with one of Abra-

moff' s tribal clients. *Id.* ¶ 25. According to the article, "copies of Abramoff's e-mails referencing [DOI officials] were obtained from a variety of sources, including the Interior Department." Compl., Exhibit ("Ex.") N (August 28, 2005 *Washington Post* article by Susan Schmidt) at 2. Because the DOI's responses to the plaintiff's FOIA requests did not include any of these e-mails, *see* Pl.'s Opp'n at 24 (stating that "the DOI's repeated failure to produce or account for the missing email alone demonstrates the inadequacy of its searches"), the plaintiff filed the complaint in this case on December 7, 2005, alleging, *inter alia*, that the defendant's searches were inadequate, *see* Compl. ¶¶ 1, 47 (stating that "[the] DOI has failed to conduct an adequate search, and has failed to use search methods reasonably expected to produce all documents responsive to plaintiff's three FOIA requests"); Def.'s Stmt. ¶¶ 100–101 (identifying claims made by the plaintiff in its December 7, 2005 FOIA action). The plaintiff also alleges that the BIA is in violation of the FOIA because it did not respond to the plaintiff's FOIA request of April 21, 2005, within the statutorily required time period. Compl. ¶¶ 55–57; *see also* Def.'s Stmt. ¶ 101.

### A. The March 18, 2005 FOIA Request

On March 18, 2005, the plaintiff requested documents and information from the defendant under the FOIA, regardless of

---

Facts ("Def.'s Stmt."); and (4) Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("Pl.'s Resp.").

**3.** In considering the defendant's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), the Court must "view the complaint's allegations in the light most favorable to the plaintiff." *Thompson v. District of Columbia*, 428 F.3d 283, 284 (D.C.Cir.2005) (citation omitted). Moreover, "[i]n deciding whether there is a genuine is-

sue of material fact [precluding a grant of summary judgment pursuant to Federal Rule of Civil Procedure 56(c)], the [C]ourt must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record." *Dist. Intown Props. Ltd. v. District of Columbia*, 198 F.3d 874, 878 (D.C.Cir.1999) (citation omitted). The plaintiff's allegations are undisputed except where noted by the Court.

format and including electronic records, relating, *inter alia,* to "any contact, dating from January 1, 2001 to the present, that any office of the Department of the Interior may have had ... with Jack Abramoff" and a host of other individuals, employees of various organizations, firms, and members of Congress. Compl., Ex. T (March 18, 2005 FOIA request from CREW to the DOI) at 1; *see also* Compl. ¶ 30; Def.'s Stmt. ¶¶ 2–6. The request also sought "any records, dating from January 1, 2001 to the present, from any office of the Department of the Interior[,] including but not limited to the Office of the Secretary, the Office of the Deputy Secretary and the Bureau of Indian Affairs," regarding six Indian tribes. Compl., Ex. T at 1. After receiving the request, Linda Thomas, the employee responsible for processing FOIA requests at the OS, telephoned the CREW representative who had filed the request. Def.'s Mot., Ex. 001 (Declaration of Linda S. Thomas) ("Thomas Decl.") ¶ 5. Ms. Thomas explained that she would "search through" documents that had been produced through similar FOIA requests and provide CREW with documents from those searches that were responsive to its request. *Id.; see also* Pl.'s Resp. ¶ 11 (stating that Ms. Thomas promised to provide CREW with responsive documents that the DOI had already provided to other requesters); Def.'s Mot. at 3; Def.'s Stmt. ¶¶ 9–11. According to Ms. Thomas, the CREW representative indicated during that telephone call "that the search efforts described [by Thomas] would be sufficient and [that] it would not be necessary for the Department to pursue the electronic records portion of [the March 18, 2005]

request at that time." Thomas Decl. ¶ 5; *see* Def.'s Mot. at 4. While admitting that the telephone call took place, Pl.'s Resp. ¶ 10, the plaintiff denies that the conversation limited the scope of its March 18th request by excluding electronic communications, *id.* ¶ 13.

The DOI issued three responses to the plaintiff's March 18, 2005 FOIA request. The agency made an initial partial response to the plaintiff's request on March 21, 2005, which produced 218 documents. Compl. ¶ 31; Def.'s Mot. at 4. The DOI made a second partial response to the March 18th request on April 12, 2005, which contained the results of a search of the Secretary's Automated Correspondence Indexing System.[4] Compl. ¶ 32; Def.'s Mot. at 5. On April 27, 2005, the defendant provided a final response to the plaintiff's March 18th request. Compl. ¶ 33; Pl.'s Opp. at 7; Def.'s Mot. at 5. The April 27th response referenced the purported agreement to limit the scope of the March 18th request, stating:

> As you will recall, by telephone we agreed that ... within the Office of the Secretary you would accept appointment records for Secretary Norton and for former Deputy Secretary Griles ... and for all of the parties and topics mentioned, and the index results of a search of the Secretary's Automated Correspondence Indexing System.

Compl., Ex. W (April 27, 2005 response to CREW's March 18th FOIA request) at 2. The response also expressly stated that CREW had thirty days to appeal the DOI's response.[5] *Id.* at 5.

---

4. During the telephone conversation with the CREW representative, Ms. Thomas stated that she would "coordinate a search of the Secretary's Automated Correspondence Indexing System" to retrieve documents responsive to

CREW's March 18th request. Thomas Decl. ¶ 5.

5. Under the DOI's regulations, a FOIA requester has 30 workdays from the receipt of a final response or the receipt of any records

CREW did not file an administrative appeal within the allotted time period. Instead, it collectively appealed all three of the defendant's responses to its March 18th request to the DOI's FOIA Appeals Officer on October 20, 2005. Compl., Ex. BB (October 20, 2005 FOIA Appeal). In its appeal, CREW argued that the DOI had conducted an inadequate search for documents responsive to its request, citing as support for its assertion the August 28th *Washington Post* article as well as multiple references by the Senate Indian Affairs Committee to existing e-mails that it had allegedly not received from the DOI. Compl. ¶ 39; Def.'s Stmt. ¶¶ 86, 89. The DOI denied the defendant's administrative appeal on November 28, 2005, on the grounds that it was untimely. Compl., Ex. CC (November 28, 2005 letter from FOIA Appeals Officer Darrell Strayhorn to CREW) at 1; *see also* Compl. ¶ 41; Def.'s Stmt. ¶¶ 95–96.

### B. The April 5, 2005 FOIA Request

The plaintiff sent a second FOIA request to the DOI on April 5, 2005, specifically requesting, *inter alia,*

> all electronic records relating to any contact ... that any of [a number of listed officials within the DOI] may have had with the individuals and entities outlined in [CREW's] March 18, 2005 FOIA request relating to any matter within the jurisdiction of the [BIA], and all contacts [these listed officials] had with the six Indian Tribes listed in [CREW's] earlier request.

Compl., Ex. X (April 5, 2005 FOIA request from CREW to the DOI); *see* Compl. ¶ 34. The April 5th request also asked for the electronic records of people occupying certain positions at the BIA from January 1, 2001, until the time of the request, and sought all documents relating to a meeting conducted by the Secretary of the DOI on November 8, 2002. Compl., Ex. X at 1–2. The OS advised the plaintiff to submit this new request because its March 18th request had been narrowed to exclude electronic records. Def.'s Mot. at 6–7; *see also* Thomas Decl. ¶ 11 (stating that she had "advised [CREW] to submit a new FOIA request because the request of March 18, 2005 has been narrowed by [CREW] to exclude electronic records"). The April 5th FOIA request stated that the plaintiff thought a new FOIA request was unnecessary, but that the DOI should, "if necessary, ... consider this letter to constitute a FOIA request and process it accordingly." Compl., Ex. X at 2; *see* Def.'s Mot. at 6–7; Pl.'s Opp'n at 7 (acknowledging that it told the DOI that, if necessary, the April 5th letter should be treated as a FOIA request).

The BIA and the OS issued separate responses to the plaintiff's April 5, 2005 request. In a letter dated July 29, 2005, the BIA informed the plaintiff that it was unable to locate any documents responsive to the request. Compl., Ex. Y (BIA's July 29, 2005 response to plaintiff's April 5th FOIA request); *see* Def.'s Mot. at 8–9; Pl.'s Opp'n at 8. Then, on August 24, 2005, the OS produced eleven documents that it deemed responsive to the April 5th request. Pl.'s Opp'n at 9; Def.'s Mot. at 7–8; Thomas Decl. ¶ 21 (stating that "on August 24, 2005, [she] prepared a letter to [CREW] [,]transmitting to them the responsive, non-exempt portions, which included 11 documents, consisting of 54 pages.") Additionally, the OS's August

provided by the agency to file an appeal. 43 CFR §§ 2.28–2.29 (2007); *see also* 5 U.S.C. § 552(a)(6)(A)(I) (directing agencies to "notify the person making [a FOIA] request of [its] determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination").

24th response stated that the plaintiff had the right to appeal the agency's response, and that "[the plaintiff's] appeal letter must be received no later than 30 calendar days ... from [the] receipt of these documents." Thomas Decl., Ex. F (August 24, 2005 response by the OS to CREW's April 5th FOIA request) at 5.

Again, the plaintiff did not file an appeal within the allotted time period. Instead, CREW appealed the BIA's response on October 20, 2005, Compl. ¶ 39; Def.'s Stmt. ¶ 86, and did not appeal the OS's August 24, 2005 response to its April 5th request at all. Pl.'s Resp. ¶ 87; Def.'s Stmt. ¶ 44. CREW's administrative appeal of the BIA's response was denied on November 28, 2005, as untimely filed. Compl., Ex. CC at 1; see Compl. ¶ 41; Def.'s Stmt. ¶¶ 95–96.

### C. The April 21, 2005 FOIA Request

At the suggestion of the OS, the plaintiff filed a third FOIA request directly with the BIA on April 21, 2005. Compl. ¶ 42; Pl.'s Resp. at 1; Def.'s Mot. at 9. This request was similar to the request CREW made on April 5, 2005 to the OS, Compl. ¶ 42, and specifically sought, *inter alia,* "information pertaining to efforts of any and all of the above-delineated tribes to receive DOI approval for gaming." Compl., Ex. DD (April 21, 2005 FOIA request from CREW to the BIA). According to the defendant, the BIA official responsible for processing the request determined that the request was too broad and sent a letter to CREW on July 29, 2005, explaining that CREW needed to narrow its request. Def.'s Mot. at 8–9 (citing the BIA's July 29, 2005 letter); see also Def.'s Mot., Ex. 003 (Declaration of Thomas H. Hartman) ("Hartman Decl.") ¶ 10 (stating that he "determined that [the] subject area of [the April 21, 2005] request [ ] was too broad"). CREW disputes that it received a response to this request, noting that "the copy included with the defendant's brief is neither signed nor on letterhead," in contrast to the July 29th letter responding to the plaintiff's April 5th request.[6] Pl.'s Opp'n at 9; Def.'s Mot. at 10. Because the BIA did not respond to the plaintiff's request within the twenty day period prescribed by statute, the plaintiff alleges that the BIA is in violation of the FOIA.[7] Compl. ¶¶ 55–57; see 5 U.S.C. § 552(a)(6)(A)(I) (directing an agency, with certain limited exceptions, to "determine within 20 days ... [of] the receipt of [a FOIA] request whether to comply with such request and [thenceforth to] immediately notify the person making such request of [its] determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination").

### D. The September 26, 2005 FOIA Request

The plaintiff alleges that it realized that "[the] DOI had still not fulfilled its obligations under the FOIA" when "[n]one of

---

6. Allegedly, there are two letters that were sent on July 29, 2005, from the BIA to CREW, with one being a response to CREW's April 5th FOIA request and the other being a response to CREW's April 21st FOIA request. The existence of the latter is disputed by the plaintiff. Pl.'s Opp'n at 9.

7. The plaintiff states that it does not possess the July 29th response from the BIA, nor does it recall ever receiving it. Pl.'s Opp'n at 9. The defendant claims that the letter was sent and has included, as evidentiary support, the declarations of three employees who attest to this fact. See Hartman Decl.; Def.'s Mot., Ex. 002 (Declaration of Willie S. Chism) ("Chism Decl."); Def.'s Mot., Ex. 006 (Declaration of Kawenniiosta Boots) ("Boots Decl.").

the documents [the] DOI had provided [to] CREW included any of the emails referenced in the [August 28, 2005] *Washington Post* article." Pl.'s Opp'n at 10; *see also id.* at 12 (alleging that the plaintiff "had no reason to doubt the adequacy of [the] DOI's prior searches until [the] ... August 28, 2005 article"). CREW then contacted Linda Thomas at the OS to obtain "copies of the electronic mail messages ... that were cited in the article." Def.'s Stmt. ¶ 73; *see also* Pl.'s Resp. ¶ 73. Ms. Thomas advised CREW that the author of the *Post* article "had herself made FOIA requests to the OS" prior to the article's publication, Def.'s Stmt. ¶ 74; *see also* Pl.'s Resp. ¶ 74, and "suggested that [the plaintiff] make another FOIA request for documents, other than those already provided to CREW, that were provided by [the] DOI to Ms. Schmidt, prior to the publication of the August 28, 2005 article," Def.'s Stmt. ¶ 76; *see* Pl.'s Resp. ¶ 76; *see also* Thomas Decl. ¶ 22. Specifically, Ms. Thomas recommended that the plaintiff "should request copies of the documents Ms. Schmidt received in response to the FOIA requests numbered ... OS–2005–02288, OS–2005–00249, OS–2005–00272, and OS–2005–00413." Def.'s Stmt. ¶ 78; *see also* Pl.'s Resp. ¶ 78. However, Ms. Thomas cautioned the plaintiff that she "did not believe that Ms. Schmidt had obtained the emails referenced in the article through a FOIA request to the OS." Def.'s Stmt. ¶ 75; *see* Pl.'s Resp. ¶ 75 (contending that "Ms. Thomas has failed to explain sufficiently the underlying basis for this belief"). Accordingly, the plaintiff filed another FOIA request on September 26, 2005, seeking those documents referenced by Ms. Thomas. Compl. ¶ 37;

Def.'s Stmt. ¶ 80; *see* Compl., Ex. Z (September 26, 2005 e-mail from CREW to the DOI). The defendant responded to the plaintiff's final request on September 27, 2005, providing 146 pages of documents.[8] Def.'s Stmt. ¶ 83; Pl.'s Resp. ¶ 82; *see* Compl., Ex. AA (September 27, 2005 letter from the DOI to CREW). The response stated, *inter alia,* that the records produced in connection with CREW's September 26, 2005 FOIA request "were selected because of [the] phone conversation in which [CREW] asked for any documents which [it] had not yet received but which had been sent to a particular author of a news story." Compl., Ex. AA at 1; *see* Def.'s Stmt. ¶ 84; Pl.'s Resp. ¶ 84. It further stated that "[a]n examination of [DOI] records identified the [four listed] FOIA requests as those containing such requests." Compl., Ex. AA at 1. The e-mails referenced in the August 2005 *Post* article were not among the records produced by the DOI in connection with CREW's request. *See* Compl. ¶ 38. Accordingly, the plaintiff filed a timely appeal of the DOI's September 27th response on October 20, 2005. *Id.* ¶ 39.

## E. Summary of CREW's Administrative Appeals to the DOI

As mentioned above, the plaintiff filed an administrative appeal on Oct. 20, 2005, alleging that the DOI searches in response to its various FOIA requests were inadequate. CREW specifically appealed (1) the OS's three responses to its FOIA request of March 18, 2005; (2) the BIA's response to its April 5, 2005 request and; (3) the OS's response to its September 26, 2005 request.[9] Pl.'s Opp'n at 12; Def.'s

---

8. After realizing that it had "inadvertently failed to recommend that CREW request a second partial response [to a previous FOIA request]," the defendant issued an amended response to the request of September 26th on

April 19, 2006. Def.'s Stmt. ¶ 104; *see also* Pl.'s Resp. ¶ 103.

9. The plaintiff did not appeal the OS's August 24th response to its April 5th request or the

Stmt. ¶ 86 n. 6; *see also* Compl., Ex. BB. According to the plaintiff, the contents of the August 28, 2005 *Washington Post* article clearly establishes that e-mails were exchanged that were (1) within the scope of the plaintiff's FOIA requests; and (2) not produced by the defendant. *See* Pl.'s Opp'n at 12. Thus, the plaintiff contends that the defendant's searches were inadequate. *See id.* On November 28, 2005, the defendant denied CREW's appeal of the March 18, 2005 and April 5, 2005 responses as untimely filed and denied the plaintiff's appeal of the September 26th response on the grounds that the search was adequate. Pl.'s Opp'n at 13–14; Def.'s Stmt. ¶¶ 96–97.

### F. Commencement of the Present Litigation

As noted above, the plaintiff filed this FOIA action on December 7, 2005, alleging that (1) the DOI failed to conduct an adequate search and has failed to use search methods reasonably expected to produce all documents responsive to its three FOIA requests; (2) the BIA failed to release records in violation of the FOIA; and (3) the BIA is in violation of the FOIA for failing to respond to the plaintiff's April 21st request within the statutory time period. Compl. ¶¶ 45–57; Def.'s Stmt. ¶¶ 100–101. In response, the defendant filed a motion for partial judgment on the pleadings and for partial summary judgment on April 21, 2006, claiming that (1) the plaintiff failed to exhaust its administrative remedies by filing untimely administrative appeals or neglecting to file appeals; (2) the defendant provided the plaintiff with all of the information requested in the September 26th FOIA request, thus rendering the plaintiff's re-

quest for production moot; and (3) one of the challenged FOIA requests remains open because the plaintiff never responded to a letter BIA allegedly sent on July 29, 2005, asking the plaintiff to narrow the scope of its April 21st FOIA request. Def.'s Mot. at 1–2. The plaintiff replied to the defendant's motion on May 18, 2006, arguing that its diligence in pursuing administrative remedies made this a proper matter for the Court's review and that the defendant has not met its burden of proving that it conducted an adequate search for all responsive documents. Pl.'s Opp'n at 15, 21.

### II. Standards of Review

#### A. Motions for Judgment on the Pleadings

■ Courts will grant judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations [in the complaint]." *Longwood Vill. Rest., Ltd. v. Ashcroft*, 157 F.Supp.2d 61, 66 (D.D.C.2001) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); see also Fed.R.Civ.P. 12(c). "[I]f there are allegations in the complaint which, if proved, would provide a basis for recovery[,]" the Court cannot grant judgment on the pleadings. *Bradley v. Smith*, 235 F.R.D. 125, 126 (D.D.C.2006) (internal quotation marks and citation omitted). "[A]ll factual doubts [must therefore be] resolved in favor of the plaintiff[ ]." *Chang v. United States*, 338 F.Supp.2d 20, 21 (D.D.C. 2004) (citation omitted). The standard of review under Rule 12(c) is thus essentially the same as that for a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Plain v.*

BIA's July 29, 2005 response to its April 21st request. Pl.'s Opp'n at 8–9; Def.'s Stmt. ¶ 87;

*see* Compl., Ex. BB.

*AT & T Corp.*, 424 F.Supp.2d 11, 20 n. 11 (D.D.C.2006).

### B. Motions for Summary Judgment

Courts will grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a Rule 56(c) motion, the Court must view the evidence in the light most favorable to the non-moving party. *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C.Cir.2006) (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party, however, cannot rely on "mere allegations or denials," *Burke v. Gould*, 286 F.3d 513, 517 (D.C.Cir.2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505) (quotation marks omitted), and "conclusory allegations unsupported by factual data will not create a triable issue of fact," *Pub. Citizen Health Research Group v. FDA*, 185 F.3d 898, 908 (D.C.Cir.1999) (internal quotation marks and citations omitted). If the Court concludes that "the non-moving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

 "[The] FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the rec-

ords are covered by the statute's exemptions." *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C.Cir. 2001) (citation omitted). The Court will grant summary judgment to the government in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Friends of Blackwater v. Dep't of Interior*, 391 F.Supp.2d 115, 119 (D.D.C. 2005) (internal quotation marks and citations omitted). Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested either has been produced ... or is wholly[, or partially,] exempt [from disclosure]." *Students Against Genocide*, 257 F.3d at 833 (internal quotation marks and citation omitted).

### III. Legal Analysis

### A. The Defendant's Motion for Partial Judgment on the Pleadings

 The defendant claims that it is entitled to partial summary judgment on the pleadings because it is undisputed that the plaintiff failed to exhaust its administrative remedies as to the agency responses to its FOIA requests of March 18, 2005, April 5, 2005, and April 21, 2005. Def.'s Mot. at 17. While the plaintiff acknowledges that it did not file an administrative appeal pertaining to its March 18th and April 5th FOIA requests until months after receiving the DOI's responses, *see* Pl.'s Opp'n at 12, and although it admits that it *never* appealed the OS's August 24, 2005 response to its April 5th request or the DOI's alleged failure to respond to its April 21st request, Pl.'s Resp. ¶ 87, it nev-

ertheless contends that judicial review of its claims is proper because "it acted diligently and in as timely a manner as possible, based on the facts known to it during the initial thirty day appeal period[s]," Pl.'s Opp. at 18. Thus, the plaintiff posits that the purposes of exhaustion would not be served by barring its claims. *Id.* at 16. The Court disagrees.

The District of Columbia Circuit has conclusively held that "exhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under [the] FOIA." *Wilbur v. CIA*, 355 F.3d 675, 676 (D.C.Cir.2004) (internal quotation marks and citation omitted); *see also Spannaus v. Dep't of Justice*, 824 F.2d 52, 57–58 (D.C.Cir.1987) (stating that "[i]t goes without saying that exhaustion is required in FOIA cases"). As a result of this requirement, "a [FOIA] requester ... must file an administrative appeal within the time limit specified in an agency's FOIA regulations or face dismissal of any lawsuit complaining about the agency's response." *Wilbur*, 355 F.3d at 676 (internal quotation marks and citation omitted). Here, DOI regulations state that an appeal on the grounds that a search pursuant to a FOIA request was inadequate "must be received by the FOIA Appeals Officer no later than 30 workdays after the date of the final response." 43 CFR § 2.29(a) (2007). Therefore, the plaintiff's October 20, 2005 attempt to exhaust its administrative remedies in connection with FOIA requests for which final responses were provided in April and July 2005 is indisputably untimely. *See* Compl., Exs. W & Y.

The exhaustion of administrative remedies does not constitute a jurisdictional prerequisite for plaintiffs seeking to challenge the adequacy of an agency's response to a FOIA request in federal court. *Wilbur*, 355 F.3d at 677 (stating that "[administrative] exhaustion of a FOIA request

is not jurisdictional because the FOIA does not unequivocally make it so") (internal quotation marks and citation omitted); *see Avocados Plus v. Veneman*, 370 F.3d 1243, 1248 (D.C.Cir.2004) (holding that only where "a statute ... contain[s] sweeping and direct statutory language indicating that there is no federal jurisdiction prior to exhaustion" may courts conclude that a particular exhaustion requirement is jurisdictional). Nevertheless, "as a jurisprudential doctrine, failure to exhaust precludes judicial review if the purposes of exhaustion and the particular administrative scheme support such a bar." *Wilbur*, 355 F.3d at 677 (internal quotation marks and citation omitted). The Court must therefore "balanc[e] the interest of the [plaintiff] in retaining prompt access to a federal judicial forum against the countervailing institutional interests favoring exhaustion." *Avocados Plus*, 370 F.3d at 1251 (internal quotation marks and citation omitted). In this case, a balancing of the interests does not weigh in the plaintiff's favor for several reasons, and consequently the exhaustion requirement should not be excused.

First, "the FOIA's administrative scheme favors treating failure to exhaust as a bar to judicial review." *Wilbur*, 355 F.3d at 677 (internal quotation marks and citation omitted). Under the FOIA, no less than any other challenge to agency action, "[e]xhaustion of administrative remedies is generally required before seeking judicial review to that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Id.* (internal quotation marks and citation omitted). The DOI was given no such opportunity in this instance. Moreover, "[a] district court may, in its discretion, excuse exhaustion if the litigant's interests in immediate judicial review outweigh the government's

interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *Avocados Plus*, 370 F.3d at 1247 (internal quotations and citation omitted); *see also id.* (stating that "[n]on-jurisdictional exhaustion serves three functions: giving agencies the opportunity to correct their own errors, affording parties and courts the benefit of agencies' expertise, [and] compiling a record adequate for judicial review") (internal quotation marks and citations omitted). Here, however, the purposes of exhaustion would be substantially ill-served by allowing the plaintiff to contest the adequacy of the DOI's responses in court without first having proceeded through the proper administrative channels. The plaintiff did not "pursue the administrative process to its end," as it claims, Pl.'s Opp'n at 18 (citing *Wilbur*, 355 F.3d at 677), despite having ample time to do so. Instead, the plaintiff filed late administrative appeals of certain agency responses to its FOIA requests and failed to appeal others at all. Excusing exhaustion in this case would therefore interfere with the defendant agency's autonomy and would deprive it of "the opportunity to correct [its] own errors." *Avocados Plus*, 370 F.3d at 1247. Although the plaintiff has repeatedly represented, as justification for the late filing of its appeal, that it did not become aware of the potential inadequacies of the defendant's search until the *Washington Post* article of August 28, 2005, Comp. ¶ 36; Pl.'s Opp'n at 18,

it conveniently omits from its complaint the fact that the OS issued a final response to the plaintiff's April 5th request, a request specifically asking for electronic records, on August 24, 2005. CREW therefore had until October 5, 2005, thirty workdays from the defendant's final response, to appeal and challenge the adequacy of the DOI's search.[10] The plaintiff's revelation about the potential inadequacy of the defendant's searches occurred on August 28, 2005, within four days after the final response was issued and well within the 30 day time period to file an appeal. *See* Def.'s Reply at 3–4. However, the plaintiff never appealed this response, nor has it provided a satisfactory explanation for its inaction. Accordingly, the Court agrees with the defendant that on this record, the plaintiff has not demonstrated diligence in exhausting ·its administrative remedies. *Id.*

▮▮▮ The plaintiff argues that its lawsuit "presents no risk of undermining the purposes and policies underlying the exhaustion requirement" because the plaintiff has not tried to bypass the administrative review process, "but has pursued it to its end." Pl.'s Opp'n at 17–18 (citing *Wilbur*, 355 F.3d at 677). According to the plaintiff, barring its claims from judicial review would "encourage FOIA requesters to file potentially non-meritorious appeals within the initial 30–day period." *Id.* at 18. Again, plaintiff ignores the fact that it had adequate opportunity to appeal the

---

10. CREW also posits that it is immaterial that it did not file an administrative appeal to the defendant's August 28th response because the records that it seeks are within the scope of the March 18th request and the agency's response to that request is subject to judicial review. Pl.'s Opp'n at 20. This argument is not compelling. The plaintiff stated in its April 5th request that, while it disagreed that this request needed to be treated as a new

request because its March 18th request had been narrowed, "it should be treated as such if necessary." Def.'s Stmt.¶ 36; Compl., Ex. X at 2. Accordingly, the plaintiff was on notice that the April 5th request was being treated as a new request and should have properly appealed the defendant's response of August 24, 2005 in order to satisfy the exhaustion requirement.

agency's response to its request for emails *within* the 30–day time period after learning of the existence of possible responsive emails, and failed to do so. As stated by the District of Columbia Circuit in *Avocados Plus,* one of the purposes of the exhaustion requirement is to allow an agency to correct its own mistakes. *Avocados Plus,* 370 F.3d at 1247. The focus of this litigation is whether the DOI conducted an adequate search, *see* Compl. ¶ 47 (stating in the Claim for Relief that "[the] DOI has failed to conduct an adequate search, and has failed to use search methods reasonably expected to produce all documents responsive to [the][p]laintiff's three FOIA requests"), and the Court agrees with the defendant that the plaintiff's failure to appeal the August 24th final response deprived it of the opportunity to correct the errors alleged by the plaintiff. The Court fails to appreciate how excusing the exhaustion requirement in this case would further the interest in agency autonomy that the requirement is designed to promote.

 Furthermore, the *Avocados Plus* Court identified "the government's interest in efficiency" as a factor in determining whether a district court should excuse exhaustion. *Avocados Plus,* 370 F.3d at 1247. Here, the interest in efficiency weighs heavily in favor of the defendant. The plaintiff emphatically states that

> [t]he DOI ... has seemingly stymied CREW's efforts to learn the truth. Despite the growing evidence uncovered by the news media and the U.S. Senate Indian Affairs Committee during its multiple hearings on the Indian gaming scandal ... DOI has refused to conduct an adequate search for the email. When external evidence ... made apparent that [the] DOI had failed to produce critical documents, including internal email, CREW gave [the] DOI more

chances to address the gross inadequacies in its responses by filing administrative appeals.

Pl.'s Opp'n at 2–3. As noted previously, the plaintiff contends that the DOI's searches were inadequate because they failed to produce e-mails referenced in the August 28th *Washington* Post article. But these disclosures, which the plaintiff describes as "obvious leads," *id.* at 22, came after the agency conducted its searches in March and April of 2005. Def.'s Reply at 14. The Court disagrees with the plaintiff that an agency's hesitancy to pursue potential leads *after* its search has been completed deems the search inadequate and justifies reviving unexhausted claims. In *Kowalczyk v. Department of Justice,* the District of Columbia Circuit stated that a "reasonable effort to satisfy [a] request does not entail an obligation to search anew based upon a subsequent clarification." 73 F.3d 386, 388 (D.C.Cir.1996). An agency need only pursue "a lead it cannot in good faith ignore." *Id.* at 389. If the agency were required to undertake an additional search every time information became available that clarified a prior request, it "could extend indefinitely the delay in processing new requests." *Id.* at 388. The interest in governmental efficiency in processing requests is therefore applicable to this case. If the DOI were required to conduct new searches *after* they had issued final responses, it would delay the processing of new requests and create a substantial backlog.

The more efficient method of obtaining information, rather than attempting to revive an unexhausted claim by filing a late appeal, would be for the plaintiff to file an additional FOIA request. The plaintiff has the ability to file additional FOIA requests at relatively little inconvenience and cost. Indeed, there is nothing to prevent the plaintiff from filing a second, more

specific FOIA request, which by its terms would be likely to encompass the documents it now seeks.[11] *See id.* at 389 (noting that "if the [FOIA] requester discovers leads in documents [it] receives from the agency, [it] may pursue those leads through a second FOIA request"); *see also Spannaus,* 824 F.2d at 61 (affirming a district court's dismissal of a FOIA action as untimely and observing that the plaintiff "can simply refile his FOIA request tomorrow and restart the process").

Because the plaintiff failed to exhaust all administrative remedies by filing late administrative appeals, or in some instances, by declining to appeal at all, and in light of the fact that the plaintiff has the opportunity to file another FOIA request to obtain the information they are seeking, a balancing of the interests does not weigh in the plaintiff's favor. *See Avocados Plus,* 370 F.3d at 1251; *Wilbur,* 355 F.3d at 677. The Court therefore declines to exercise its discretion and excuse the plaintiff's failure to exhaust its administrative remedies. Accordingly, the defendant's motion for judgment on the pleadings with respect to the plaintiff's claims as to the March 18th and April 5th searches is granted.

## B. The Defendant's Motion for Partial Summary Judgment

 The plaintiff claims that the defendant's search for documents responsive to its FOIA requests was inadequate because (1) there exist "positive indicia of overlooked material"; and (2) despite this evidence, "[the] DOI failed to undertake a systematic approach in locating [additional] responsive documents." Pl.'s Opp'n at 22; *see also id.* (arguing that the defen-

dant "repeated[ly] refus[ed] to follow through on obvious leads to discover requested documents") (internal quotation marks and citation omitted). Therefore, the plaintiff argues that the defendant's motion for summary judgment must be denied. As support for its position, the plaintiff alleges that "[t]he *Washington Post* article of August [2] 8, 2005, as well as subsequent disclosures by the Senate Indian Affairs Committee, put [the] DOI on notice that there were outstanding email[s] within DOI that the agency had failed · to uncover," which should have caused the defendant to "renew its search for those clearly responsive documents." *Id.* The Court disagrees.

 The District of Columbia Circuit has held that "once all requested records [have been] surrendered [by an agency in response to a FOIA request], federal courts have no further statutory duty to perform." *Perry v. Block,* 684 F.2d 121, 125 (D.C.Cir.1982) (also stating that federal courts are "authorized only to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld") (internal quotation marks and citation omitted). Here, the plaintiff's September 26th FOIA request asked for documents that were previously provided to other FOIA requesters (but not to the plaintiff) in four similar requests, specifically, OS–2005–00–288, OS–2005–00–249, OS–2005–00–272, and OS–2005–00–413. Compl. ¶ 37; Def.'s Mot. at 24. These documents were provided to the plaintiff in the DOI's final response of September 27, 2005. Def.'s Stmt. ¶¶ 82–84; Pl.'s Resp.¶ 82; Compl., Ex. Z. The plaintiff does not dispute that it

---

11. While it is true that CREW filed a subsequent FOIA request on September 26, 2005, it narrowed its request to include only those documents given to other requesters in four specific previous requests. As discussed further below, the DOI was "not obliged to look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk,* 73 F.3d at 389.

received all documents specifically responsive to its request, but maintains that considering this particular request and the response to it in isolation "seriously misstates what is at issue" because the inadequacy of the DOI's search must be viewed in broader terms.[12] Pl.'s Opp'n at 23. However, an agency's duty is simply to conduct a reasonable search, and "[the agency] is not obliged to look beyond the four corners of the [FOIA] request for leads to the location of responsive documents." *Kowalczyk*, 73 F.3d at 389. Because the defendant fulfilled the plaintiff's request by producing, as the plaintiff had asked, all documents previously provided to Ms. Schmidt in FOIA requests OS–2005–00–288, OS–2005–00–249, OS–2005–00–272, and OS–2005–00–413, there can be no question as to the adequacy of the defendant's search. *See* Def.'s Stmt. ¶¶ 73–80; Pl.'s Resp. ¶¶ 73–80; Compl., Ex. Z (September 26, 2005 e-mail from CREW to the DOI). Furthermore, as stated above, to the extent that the plaintiff feels that there remain certain responsive documents in the defendant's possession that other, broader searches might be likely to uncover, it is perfectly free to file an additional FOIA request specifically tailored to target those documents. *See Kowalczyk*, 73 F.3d at 389 (noting that "if the [FOIA] requester discovers leads in documents [it] receives from the agency, [it] may pursue those leads through a second FOIA request").

The defendant further asserts that it "is entitled to summary judgment on [c]laim [t]hree of the plaintiff's complaint" because the plaintiff failed to respond to the BIA's letter of July 29, 2005, and, thus, the claim "remains open at the BIA." Def.'s Mot. at 26. Willie Chism, the FOIA officer for the BIA, represented in a sworn declaration that she responded to the plaintiff's April 21st request in a letter dated July 29, 2005. Def.'s Stmt. ¶ 63; Chism Decl. ¶ 5. Ms. Chism stated that the document attached to her declaration is "[a] true and correct copy of the file copy of that response." *Id.; see* Def.'s Reply at 20. In addition, Thomas Hartman, the FOIA Coordinator for the Office of Indian Gaming Management, represented that he drafted a letter for Ms. Chism to sign asking CREW to narrow their request. Hartman Decl. ¶ 11. According to Mr. Hartman, he gave the drafted response to

---

**12.** The plaintiff argues that "the contours of [the September 26th] request, like the contours of earlier requests [the] DOI advised CREW to make, were set by [the] DOI based on representations [the] DOI made to CREW about how to best obtain the email CREW has been seeking," and that "[the] DOI has . . . consistently led CREW down false paths." Pl.'s Opp'n at 23–24. While it is true that the DOI made recommendations to CREW regarding what its FOIA requests should encompass, the Court does not see this as an intentional effort to lead CREW astray. As stated above, the *Washington Post* article of August 28th was published *after* the DOI had issued final responses to CREW's March 18th and April 5th FOIA requests, and thus, contrary to the plaintiff's contention, there was no "refusal to follow obvious leads." Pl.'s Opp'n at 22 (quoting *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C.Cir. 1999)). Additionally, Ms. Thomas, who handled CREW's September 26th FOIA request, stated that she told CREW at the time of its request that "[b]ased on my experience processing previous FOIA requests from Ms. Schmidt, [the author of the August 28th *Washington Post* article], I did not believe that [Ms. Schmidt] had obtained the electronic mail messages she referenced in her article through a FOIA request to the OS." Thomas Decl. ¶ 22. CREW has not disputed Ms. Thomas's statement. Def.'s Reply at 18. Furthermore, the defendant identifies the problem with the plaintiff's September 26th request, explaining that "CREW did not . . . request that Ms. Schmidt's four FOIA requests be processed again in light of the new 'evidence' of emails referenced [in her article]." *Id.* at 17 n. 11. On this record, the Court fails to see how the defendant has misled CREW or acted in bad faith.

his secretary to finalize and transmit to Ms. Chism for her signature. *Id.* ¶ 12. Moreover, according to the defendant, a copy of the BIA's July 29, 2005 reply to CREW was located in the Office of Indian Gaming Management's ("OIGM") chronological files. Def.'s Reply at 21; Boots Decl. ¶¶ 3–4 (stating that "the presence in the files of a final, signed version of the letter indicates that it was mailed").

The plaintiff nonetheless disputes the BIA's claim that it sent a letter to CREW on July 29, 2005. Pl.'s Opp'n at 25 (arguing that the record indicates the letter was "never in fact sent"). CREW has been unable to locate the letter in its files and alleges that "[the] defendant has not provided [ ] a signed copy of the letter, on letterhead, or any proof that CREW actually received the letter." *Id.* To support its argument, the plaintiff points out that the OIGM's file copy lacks a letterhead and a handwritten signature. Pl.'s Opp'n at 25 n. 14; *see also* Def.'s Reply at 20 (stating that "CREW has failed to explain how the absence of letterhead and a handwritten signature undermines Ms. Chism's sworn statement that the exhibit is an authentic, true and correct file copy of her response") (internal quotation marks and citation omitted).

As previously stated, in opposing a motion for summary judgment, the non-moving party cannot rely on "mere allegations or denials." *Burke* 286 F.3d at 517 (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505) (internal quotation marks omitted). Thus, "conclusory allegations unsupported by factual data will not create a triable issue of fact." *Pub. Citizen Health Research Group,* 185 F.3d at 908 (internal quotation marks and citations omitted). If the Court can conclude that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the moving party is entitled to summary judgment. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. Here, the non-moving party, CREW, has failed to sufficiently prove that the BIA never actually sent a letter on July 29, 2005, responding to CREW's April 21st FOIA request. The Court agrees with the defendant that the sworn declarations by the DOI employees who were involved in the process of sending the letter provides sufficient evidentiary support for its position that the letter was signed and sent. *See* Reply at 20. Thus, the request "remains open at the BIA," Def.'s Mot. at 26, and the defendant is therefore entitled to summary judgment on the third claim of the plaintiff's complaint.

## IV. Conclusion

For the foregoing reasons, the Court concludes that the defendant is entitled to partial judgment on the pleadings and partial summary judgment at this time. Additionally, the Court notes that there is nothing preventing the plaintiff from filing additional FOIA requests specifically tailored to obtain the information they are seeking. Indeed, it is in the interests of judicial efficiency and agency autonomy that it be required to pursue that course.

**SO ORDERED** this 31st day of July, 2007.[13]

---

**13.** An Order consistent with the Court's ruling was issued on July 30, 2007.